Thiago M. Coelho (SBN 324715)
*ThiagoCoelhosTeam@wilshirelawfirm.com*
Brian Ellsworth (SBN 326756)
*brian.ellsworth@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa St., Sky Lobby
Los Angeles, California 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK ALLEN HUNTER, individually and on behalf of all others similarly situated,<br>*Plaintiff,*<br>v.<br>DEXCOM, INC., a Delaware corporation,<br>*Defendant.* | Case No.: '26CV5727 AJB MMP<br>**CLASS ACTION COMPLAINT**<br>1. Negligence<br>2. Breach of Implied Contract<br>3. Unjust Enrichment / Quasi-Contract<br>4. Violation of the CMIA<br>5. Invasion of Privacy<br>6. Oregon Unlawful Trade Practices Act<br>7. Breach of Confidence<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Mark Allen Hunter ("Plaintiff"), individually and on behalf of the Nationwide Class and Oregon Subclass defined below, brings this action against DexCom, Inc. based on personal knowledge as to his own acts and experiences, and upon information and belief as to other matters based on the investigation of his attorneys, and alleges as follows:

## NATURE OF THE ACTION

1. This class action arises from DexCom, Inc.'s failure to safeguard the highly sensitive personal and medical information entrusted to it by consumers who use its continuous glucose monitoring devices, applications, data-sharing services, and product-support services. Dexcom develops and sells glucose-monitoring technology and maintains the information that consumers supply and generate through that technology. Its business depends on consumers entrusting it with information about their identities and health.[1]

2. Plaintiff Mark Allen Hunter ("Plaintiff"), individually and on behalf of all others similarly situated, seeks relief for the unauthorized access to, acquisition of, and exfiltration of Private Information maintained by or on behalf of Dexcom in the cybersecurity incident publicly attributed to ShinyHunters on or about October 3, 2026 (the "Data Breach"). Upon information and belief, unauthorized persons obtained Plaintiff's and Class Members' Private Information because Defendant failed to implement and maintain reasonable safeguards appropriate to the sensitivity of that information.

3. On or about October 3, 2026, ShinyHunters publicly identified Dexcom on its data-leak website and threatened to publish data obtained from the company. The group's listing, history, and publication threat form part of the factual basis for Plaintiff's allegations that Dexcom's information was acquired by unauthorized third

---

[1] DexCom, Inc., Annual Report on Form 10-K for the year ended December 31, 2025, cover page and Item 1, https://www.sec.gov/Archives/edgar/data/1093557/000109355726000027/dxcm-20251231.htm (last visited Oct. 5, 2026).

parties.[2]

4. "Private Information," as used in this Complaint, means the personally identifying and individually identifiable health information that Defendant collected or maintained concerning Plaintiff and Class Members in connection with Dexcom's consumer products and services. It includes identifying and demographic information associated with consumer accounts, glucose-monitoring information, and information concerning health, device use, technical-support requests, and sensor replacements. Identifiable health information is referred to as "medical information"; where subject to HIPAA, it is also protected health information ("PHI").

5. Dexcom's relationship with Plaintiff is longstanding and direct. Plaintiff has used Dexcom's glucose-monitoring technology since approximately 2013. He primarily uses Dexcom's application, shares data with his physicians and clinics through Dexcom Clarity, and has authorized Dexcom to share data with Tidepool, which he and his physicians also use. He has also repeatedly provided demographic and medical information directly to Dexcom while seeking technical assistance and replacement sensors.

6. Upon information and belief, the Private Information compromised in the Data Breach includes consumer identifying and demographic information linked to medical and device-support information. Plaintiff alleges upon information and belief that his information was among the information accessed and acquired, based on his longstanding use of Dexcom's data services, Dexcom's possession of his identifiable health and support records, and the reported acquisition of Dexcom data. The particular records and fields affected will be established through Defendant's records and discovery.

7. Dexcom exercised control over the collection, retention, access

---

[2] Cybernews, ShinyHunters resurfaces with O'Reilly Auto Parts, Dexcom breach claims after FBI hack showdown, https://cybernews.com/news/shinyhunters-oreilly-auto-dexcom-breach-fbi-hack/ (last visited Oct. 5, 2026).

permissions, and protection of the information entrusted to it. Plaintiff and Class Members could not inspect or control Dexcom's internal databases, administrative accounts, security monitoring, or the safeguards applied by vendors acting on its behalf.

8. Defendant's conduct deprived Plaintiff and Class Members of the confidentiality of their sensitive information and exposed them to misuse of their identities and medical information. Their injuries include the loss of privacy and control over their information, impairment of the confidential data services they received, diminished value of the reasonably protected sharing functionality included in products and services purchased by Plaintiff and purchasing Class Members, and the reasonable burdens of responding to the compromise. Plaintiff seeks compensatory and statutory relief where available, restitution, and an injunction requiring appropriate protection of the information Defendant continues to maintain.

## THE PARTIES

9. Plaintiff Mark Allen Hunter is a citizen of Oregon residing in Springfield, Oregon. He is a consumer and user of Dexcom's glucose-monitoring devices, applications, and related services. He has entrusted Dexcom with identifying, demographic, and individually identifiable medical information in connection with those products and services. Plaintiff is a member of the Nationwide Class and Oregon Subclass defined below.

10. Defendant DexCom, Inc. ("Dexcom") is a Delaware corporation with its principal executive offices at 6340 Sequence Drive, San Diego, California 92121. Dexcom directs its business from California and offers its products and services to consumers throughout the United States.[3]

11. Upon information and belief, Dexcom owned, licensed, maintained, or

---

[3] DexCom, Inc., Annual Report on Form 10-K for the year ended December 31, 2025, cover page and Item 1, https://www.sec.gov/Archives/edgar/data/1093557/000109355726000027/dxcm-20251231.htm (last visited Oct. 5, 2026).

controlled the systems and records containing the Private Information at issue, or selected and supervised service providers that maintained that information on its behalf. Dexcom determined the purposes for collecting the information and retained responsibility for reasonable safeguards within the operations it controlled.

12. Allegations concerning Defendant's acts and omissions include acts and omissions of its officers, employees, and agents undertaken within the scope of their authority or employment. Defendant is sued for its own conduct and for conduct for which it is legally responsible.

## JURISDICTION AND VENUE

13. This Court has original subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), (5)(B), and (6). This is a proposed class action in which the Nationwide Class exceeds 100 members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one Class Member is a citizen of a State different from Defendant.

14. Plaintiff is a citizen of Oregon. Dexcom is incorporated in Delaware and maintains its principal place of business in San Diego, California, and is therefore a citizen of Delaware and California under 28 U.S.C. § 1332(c)(1). Minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

15. Upon information and belief, the Data Breach affected at least tens of thousands of consumers whose Private Information Dexcom maintained in connection with its nationwide consumer products and services. The proposed Class therefore contains more than 100 members.

16. Upon information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, when the claims of the tens of thousands of Nationwide Class Members are aggregated under 28 U.S.C. § 1332(d)(6). The aggregate relief sought includes compensatory damages, statutory and nominal damages under the claims for which they are available, restitution, punitive damages on the Oregon statutory claim, the value of equitable relief, and attorneys' fees

recoverable under applicable law.

17. This Court has personal jurisdiction over Dexcom because its principal place of business is in San Diego County, California. Dexcom is at home in California, where it conducts substantial business and directs the corporate operations relevant to the conduct alleged here.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred here. Dexcom maintains its principal place of business in San Diego. Upon information and belief, material decisions and omissions concerning the collection, retention, and protection of the Private Information at issue occurred in or were directed from this District.

19. Upon information and belief, Dexcom's management in California approved and directed the enterprise policies, budgets, vendor oversight, and security practices governing its handling of consumer information. Those California acts and omissions are among the operative facts underlying Plaintiff's claims. Dexcom's own disclosures describe centralized senior-management oversight of its cybersecurity and privacy programs.[4]

20. Plaintiff seeks application of California law to the California conduct alleged here and to claims for which California law governs under applicable choice-of-law principles. The common-law claims asserted for the Nationwide Class are also pleaded, in the alternative, under the law applicable to Plaintiff and Class Members as determined by the Court. Plaintiff separately asserts the Oregon Unlawful Trade Practices Act and Oregon breach-of-confidence claims for himself and the Oregon Subclass. The geographical scope of any certified claim may be refined in light of the evidence and the Court's choice-of-law determinations.

[4] DexCom, Inc., Annual Report on Form 10-K for the year ended December 31, 2025, Item 1C, "Cybersecurity," https://www.sec.gov/Archives/edgar/data/1093557/000109355726000027/dxcm-20251231.htm (last visited Oct. 5, 2026).

## FACTUAL ALLEGATIONS

### A. Dexcom Collects and Maintains Sensitive Consumer Health Information

21. Dexcom's products combine wearable glucose sensors with applications and related data services. The resulting services allow consumers to monitor glucose information and share information relevant to the management of their health. The relationship necessarily involves the handling of sensitive information associated with identifiable people.

22. Dexcom Clarity permits consumers to upload glucose information, examine trends and statistics, and provide reports to healthcare professionals. Dexcom therefore does more than sell a stand-alone piece of hardware: its services receive, organize, and make health information available to consumers and their designated healthcare providers.[5]

23. Dexcom affirmatively markets sharing information with healthcare professionals as a benefit of its connected glucose-monitoring products. In its December 8, 2022 announcement of the G7's FDA clearance, before Plaintiff's purchase, Dexcom promoted the ability to share information with loved ones and care teams through remote monitoring and reporting.[6] Its G7 product webpage advertises: "Seamlessly share CGM data with your doctor through Dexcom Clarity."[7]

24. Dexcom's Clarity webpage likewise states: "You can connect your Clarity data with your clinic for review anytime, even remotely."[8] These sharing

---

[5] Dexcom, Dexcom Clarity, https://clarity.dexcom.com/ (last visited Oct. 5, 2026).

[6] Dexcom, Dexcom G7 Receives FDA Clearance: The Most Accurate Continuous Glucose Monitoring System Cleared in the U.S. (Dec. 8, 2022), https://investors.dexcom.com/news/news-details/2022/Dexcom-G7-Receives-FDA-Clearance-The-Most-Accurate-Continuous-Glucose-Monitoring-System-Cleared-in-the-U.S/default.aspx (last visited Oct. 6, 2026).

[7] Dexcom, CGM for Type 1 Diabetes—Dexcom G7, https://www.dexcom.com/en-us/g7-cgm-system/type-1 (last visited Oct. 6, 2026).

[8] Dexcom, Dexcom Clarity Diabetes Management Software, https://www.dexcom.com/en-us/clarity (last visited Oct. 6, 2026).

capabilities are advertised features of the connected products offered to consumers generally. Reasonably secure handling of the sensitive information collected, maintained, and shared through those services is a material component of their value.

25. Secure data sharing is central to the value of Dexcom's connected products, and Dexcom has long known the importance of sharing to its customers. A 2021 study, supported by Dexcom itself, surveyed 302 adults with type 1 diabetes who used the Dexcom G5 Mobile or G6 system and shared their glucose information with family members or friends. Of those respondents, 89.1% reported that sharing gave them greater peace of mind, and 89.4% reported greater confidence in avoiding or managing hypoglycemia.[9] Authorized sharing is a valuable feature of Dexcom's connected products. The reported benefits and Dexcom's advertising support its materiality to reasonable consumers and its role in generating demand for those products.

26. Reasonably secure sharing is an attribute of the integrated products and services offered to purchasers, whether or not a particular purchaser activates or uses that feature. Reasonable consumers would value and pay more for a connected product with the represented safeguards than for an otherwise identical product with materially deficient protection for their health information. Upon information and belief, Dexcom's promotion of sharing together with its security representations increased consumer demand and inflated the prices of affected products above the prices they would have commanded had the material security deficiencies been disclosed. The resulting overpayment is a common economic injury attributable to the price of the product as sold.

[9] William H. Polonsky & Addie L. Fortmann, Impact of Real-Time Continuous Glucose Monitoring Data Sharing on Quality of Life and Health Outcomes in Adults with Type 1 Diabetes, 23 Diabetes Technology & Therapeutics 195–202 (2021), https://pmc.ncbi.nlm.nih.gov/articles/PMC7906862/ (last visited Oct. 6, 2026). This investigator-initiated study was supported by Dexcom.

27. Dexcom's Privacy Notice applies to information collected through accounts, products, applications, customer-service communications, and product complaints. It describes collecting identifiers, demographic information, and health information. It also explains that certain products and services may be unavailable when required information is not provided.[10]

28. Dexcom represents that the glucose information consumers entrust to its connected products and sharing services is protected by security safeguards and privacy standards. On its Trust Center webpage, Dexcom states: "Your data is our responsibility. We are committed to delivering a secure platform that adheres to stringent privacy standards." It further represents that it has implemented comprehensive processes, safeguards, and training to protect customer data. In its 2025 Form 10-K, Dexcom also states that it deploys multiple layers of security measures to protect sensitive information and the systems and devices that store and transmit it.[11] These representations make protection of shared health information part of the connected services Dexcom offers consumers.

29. Consumers may supply identifying and medical information directly through their accounts, applications, device use, calls, and support requests. They may also authorize designated clinicians or data platforms to receive their information. A consumer's authorization to share information for healthcare or device-support purposes does not authorize disclosure to criminals or relieve the entity retaining the information of its own security obligations.

30. The information at issue is identifiable. It is associated with consumer

---

[10] Dexcom, Privacy Notice, "Purpose of this Privacy Notice," "Personal Data Collected, Purposes, and Recipients," and "Safeguarding Personal Data," https://www.dexcom.com/en-us/legal/privacy-policy (last visited Oct. 5, 2026).

[11] Dexcom, Trust Center, https://www.dexcom.com/en-us/trust-center; DexCom, Inc., Annual Report on Form 10-K for the year ended December 31, 2025, Item 1A, "Risk Factors," p. 43, https://www.sec.gov/Archives/edgar/data/1093557/000109355726000027/dxcm-20251231.htm (both last visited Oct. 6, 2026).

accounts and with the demographic information used to verify the person requesting support. Linking medical or device information with a person's name, contact information, account identifier, or other identifying details reveals whose health or treatment the information concerns.

31. Defendant benefits from maintaining these records because the records enable ongoing device support, replacement fulfillment, account administration, and delivery of connected glucose-monitoring services. Maintaining that information also creates foreseeable risks when access is not appropriately restricted and monitored.

32. The sensitivity of medical information is not determined by whether it appears in a formal clinical chart. A support record can disclose a person's use of a prescribed medical device, information about that person's health, and answers to medical questions. When connected to identifying information, those details reveal private facts about the consumer.

33. Upon information and belief, Defendant retained consumer account and support information beyond the completion of individual interactions, making reasonable retention limits, access controls, and safeguards essential. Retaining years of sensitive records increases the consequences of an unauthorized person obtaining access.

**B. Plaintiff's Relationship with Dexcom and the Information He Entrusted to It**

34. Plaintiff has used Dexcom's glucose-monitoring technology since approximately 2013. He purchased a Dexcom G7 in 2024 and currently uses the G7 system. In the course of his relationship with Dexcom, the company has received and maintained his demographic information and glucose information. Plaintiff primarily uses Dexcom's application in connection with his device.

35. Plaintiff uses Dexcom Clarity to share his data with multiple physicians and clinics. His use of Clarity connects the information maintained by Dexcom to the healthcare providers who assist with his medical care.

36. Plaintiff and his physicians also use Tidepool. Plaintiff has given Dexcom

permission to share his information with that service. His permission is for authorized use of his data in managing his health; it is not permission for unauthorized acquisition, publication, or exploitation of his information.

37. Plaintiff has repeatedly contacted Dexcom for technical assistance and replacements for faulty sensors. During those contacts, Dexcom requires him to verify demographic information and asks about his weight and other medical matters before authorizing replacements.

38. Plaintiff recently required four sensor replacements within a single month. His repeated requests for replacement sensors involved direct, recurring exchanges of identifying and medical information with Dexcom through its customer-support channels.

39. Plaintiff's support interactions provide a separate basis, in addition to his device and application use, for Dexcom's possession of records about him. Those interactions associate identifying information with medical responses and records of his device use. The information was supplied for purposes of obtaining services and assistance from Dexcom.

40. Plaintiff entrusted this information to Dexcom with the reasonable expectation that it would be used for authorized purposes and maintained with reasonable security. The confidential handling of his medical information was an essential part of the relationship in which he supplied that information and used Dexcom's connected services.

41. Plaintiff's 2024 purchase of the Dexcom G7 acquired a connected medical product designed to function with Dexcom's applications and data services. The ability to share glucose information with his healthcare team was a material reason Plaintiff purchased the G7. Reasonably secure handling of the identifying and health information required to use those services was part of the value of the integrated product and services he purchased. The purchase was for personal and household health-management purposes.

42. Plaintiff did not authorize any hacker, data-extortion group, or other unauthorized person to obtain, examine, copy, publish, sell, or otherwise exploit his information. He did not agree that his medical history and related support information could be made available to unauthorized persons as a condition of using Dexcom's technology.

43. Plaintiff continues to use Dexcom's services and to have sensitive information maintained by Dexcom. He therefore has a continuing interest in the confidentiality of the records Dexcom retains and in adequate protection of information provided through ongoing use of its products and services.

44. Plaintiff recently learned of the Data Breach. He has not received a breach notification from Dexcom.

**C. Dexcom's Security Commitments and Knowledge of the Risks**

45. Dexcom represents in its Privacy Notice that it has physical, technical, and administrative safeguards designed to protect personal data against loss, misuse, theft, unauthorized access, and unauthorized disclosure, consistent with legal obligations and industry practices. This representation concerns reasonable protective measures for information that Dexcom chooses to collect and retain.[12]

46. Dexcom's representations about safeguards describe existing characteristics and qualities of its connected products and services. They concern the security practices Dexcom actually uses when it solicits, receives, and maintains consumers' Private Information, including information generated through the G7, its applications, and Clarity. Those safeguards protect the sensitive information consumers must entrust to Dexcom to obtain the advertised benefit of sharing it with their healthcare teams.

47. For information within the scope of its Notice of Privacy Practices,

---

[12] Dexcom, Privacy Notice, "Purpose of this Privacy Notice," "Personal Data Collected, Purposes, and Recipients," and "Safeguarding Personal Data," https://www.dexcom.com/en-us/legal/privacy-policy (last visited Oct. 5, 2026).

Dexcom acknowledges its responsibility to maintain the privacy and security of protected health information and to notify affected individuals promptly of a breach compromising that information. The scope of those responsibilities depends on the activity and information involved; Dexcom's handling of consumer information is also subject to duties independent of HIPAA.[13]

48. Dexcom's annual report describes a cybersecurity program that includes outside assessments, management review, employee training, phishing testing, and encryption. Those disclosures demonstrate Dexcom's awareness of the importance of safeguards against unauthorized access to sensitive information and of the need to evaluate and maintain those safeguards.[14]

49. Because Dexcom solicits information for ongoing management of consumers' health, it knows that disclosure of the information can reveal deeply private matters. Dexcom also knows that consumers must depend on safeguards they cannot independently inspect and that a failure of those safeguards can harm consumers long after a particular device or support transaction ends.

50. The risk that criminals will seek access to identifiable medical and customer information is foreseeable. Reasonable protection must address unauthorized use of legitimate accounts as well as direct intrusion into systems. It must also address the data-access privileges granted to personnel and service providers.

51. The Federal Trade Commission's published business guidance calls for identifying the sensitive information a business possesses, limiting unnecessary retention and access, protecting retained information, and preparing for security incidents. Its security guidance also addresses authentication, monitoring, and

[13] Dexcom, Notice of Privacy Practices, scope of Notice and "Our Responsibilities," https://www.dexcom.com/en-us/notice-of-privacy-practices (last visited Oct. 5, 2026).

[14] DexCom, Inc., Annual Report on Form 10-K for the year ended December 31, 2025, Item 1C, "Cybersecurity," https://www.sec.gov/Archives/edgar/data/1093557/000109355726000027/dxcm-20251231.htm (last visited Oct. 5, 2026).

supervision of service providers. These are relevant standards of reasonable care for businesses handling sensitive consumer information.[15]

52. The National Institute of Standards and Technology's Cybersecurity Framework 2.0 organizes cybersecurity risk management around governance, identification, protection, detection, response, and recovery. The framework provides an additional benchmark for assessing a reasonable security program, including management responsibility and oversight of risks.[16]

53. Reasonable care required Defendant to assess the sensitivity of the information it retained and apply safeguards proportionate to the foreseeable harm from its exposure. A system containing identifiable health information requires effective access restrictions, monitoring, and response procedures capable of preventing or limiting unauthorized extraction.

54. Plaintiff and Class Members were foreseeable victims of failures in those safeguards. Defendant knew whose information it held and understood why it had been supplied. Defendant was in a substantially better position than consumers to identify weaknesses and prevent unauthorized access to the systems and records it controlled.

**D. The Data Breach and Defendant's Failure to Protect the Information**

55. By early October 2026, ShinyHunters had listed Dexcom on its leak website and threatened publication of information taken from the company. The threatened publication was a means of pressuring Dexcom through the exposure of information that had been in its custody or control. The listing identified Dexcom as a

---

[15] Federal Trade Commission, Protecting Personal Information: A Guide for Business, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business-0; Federal Trade Commission, Start with Security: A Guide for Business, https://www.ftc.gov/business-guidance/resources/start-security-guide-business (both last visited Oct. 5, 2026).

[16] National Institute of Standards and Technology, NIST Releases Version 2.0 of Landmark Cybersecurity Framework (Feb. 26, 2024), https://www.nist.gov/news-events/news/2024/02/nist-releases-version-20-landmark-cybersecurity-framework (last visited Oct. 5, 2026).

target of the group's data-extortion activity.

56. ShinyHunters has a documented history of possessing and disclosing authentic stolen data, and its past claims have repeatedly been corroborated by victim disclosures, examination of the data, and criminal proceedings. The Department of Justice documented theft of hundreds of millions of customer records and ShinyHunters' sale postings involving more than 60 companies.[17] Specific examples include Mathway, which confirmed unauthorized acquisition of account information that ShinyHunters offered for sale;[18] Havenly, which notified customers after ShinyHunters published its records;[19] AT&T, whose customer data advertised by ShinyHunters was subsequently validated by researcher Troy Hunt and acknowledged by AT&T;[20] and Ticketmaster, whose parent disclosed unauthorized database activity after ShinyHunters offered its data for sale.[21] This corroborated history, together with

---

[17] U.S. Department of Justice, Member of notorious international hacking crew sentenced to prison (Jan. 9, 2024), https://www.justice.gov/usao-wdwa/pr/member-notorious-international-hacking-crew-sentenced-prison (describing stolen records and sales involving more than 60 companies).

[18] Lawrence Abrams, Mathway investigates data breach after 25M records sold on dark web, BleepingComputer (May 22, 2020), https://www.bleepingcomputer.com/news/security/mathway-investigates-data-breach-after-25m-records-sold-on-dark-web/; Mathway, Notice of Data Security Incident, https://oag.ca.gov/system/files/Mathway%20Breach%20Notice%20Email.pdf.

[19] Lawrence Abrams, Havenly discloses data breach after 1.3M accounts leaked online, BleepingComputer (Aug. 2, 2020), https://www.bleepingcomputer.com/news/security/havenly-discloses-data-breach-after-13m-accounts-leaked-online/ (reviewing leaked records and reproducing Havenly's notification).

[20] Lawrence Abrams, AT&T denies data breach after hacker auctions 70 million user database, BleepingComputer (Aug. 20, 2021), https://www.bleepingcomputer.com/news/security/atandt-denies-data-breach-after-hacker-auctions-70-million-user-database/; Troy Hunt, Inside the Massive Alleged AT&T Data Breach (Mar. 19, 2024, updated Mar. 31, 2024), https://www.troyhunt.com/inside-the-massive-alleged-att-data-breach/; AT&T, AT&T Addresses Recent Data Set Released on the Dark Web (Mar. 30, 2024), https://about.att.com/story/2024/addressing-data-set-released-on-dark-web.html.

[21] Lawrence Abrams, Ticketmaster confirms massive breach after stolen data for sale

the group's identification of Dexcom and threat to publish its data, supports the inference that the Dexcom announcement reflects actual possession of stolen information. Upon information and belief, ShinyHunters acquired Dexcom's Private Information as announced.

57. Upon information and belief, unauthorized persons accessed and acquired information maintained by or on behalf of Dexcom, including Private Information concerning consumers who used its devices, applications, or support services. Plaintiff alleges that the acquisition and resulting loss of confidentiality constitute the Data Breach defined above.

58. Upon information and belief, Plaintiff's identifying information and medical information were included in the compromised records. His account, glucose-data history, and repeated support requests provide specific grounds for alleging that Dexcom maintained identifiable health information about him during the period relevant to the Data Breach.

59. Upon information and belief, the unauthorized persons reviewed information obtained from Dexcom in order to identify the company, determine the character of the acquired records, and use the information in furtherance of their extortion demands. Plaintiff alleges upon information and belief that this review included individually identifiable medical information, resulting in an actual loss of confidentiality.

60. The precise dates of initial access, the accounts and repositories accessed, the methods of acquisition, the duration of the intrusion, and the identities of all affected consumers are matters substantially within Defendant's knowledge and the

---

online, BleepingComputer (May 31, 2024), https://www.bleepingcomputer.com/news/security/ticketmaster-confirms-massive-breach-after-stolen-data-for-sale-online/; Live Nation Entertainment, Inc., Form 8-K, Item 8.01 (filed May 31, 2024), https://www.sec.gov/Archives/edgar/data/1335258/000133525824000081/lyv-20240520.htm.

records of its investigators and service providers. Plaintiff will identify those details through discovery.

61. Upon information and belief, Defendant failed to apply effective restrictions on access to sensitive consumer information; failed to adequately secure accounts or credentials capable of reaching that information; and failed to detect and interrupt unauthorized access or extraction before consumers' information was acquired.

62. Upon information and belief, Defendant also failed to adequately assess and remediate weaknesses affecting the systems that held the compromised information, and failed to apply effective oversight to persons or service providers with access to those systems. The applicable measures included controls appropriate to the particular access path and repositories involved in the Data Breach.

63. Defendant's duties required meaningful implementation and maintenance of safeguards. Having written policies or conducting general training did not discharge the duty to reasonably protect the information in the systems from which it was actually acquired.

64. Upon information and belief, appropriate access controls, timely detection, and a reasonable response would have prevented the unauthorized acquisition or substantially limited its scope. Defendant's failures enabled unauthorized persons to obtain sensitive information and deprived affected consumers of its confidentiality.

65. Defendant also had a duty to investigate the incident reasonably and provide timely, accurate information necessary for affected consumers to respond. Discovery will establish when Defendant learned of the intrusion, what it learned about the compromised data, and whether its response satisfied the duties applicable to the information involved.

66. Plaintiff alleges that the security failures and resulting disclosure arose from Defendant's handling of information entrusted to it. He seeks relief for that

mishandling and the resulting invasion of confidentiality, including with respect to information Dexcom retained from earlier interactions.

**E. The Nature of the Information Creates Lasting Harm**

67. Identifiable glucose measurements and information supplied in response to medical questions reveal private aspects of a person's physical condition and care. Disclosing those records to an unauthorized person invades confidentiality even before a fraudulent financial transaction occurs.

68. Combining identity and contact information with details about a person's medical device or support history can facilitate targeted impersonation. A person possessing those details can make communications appear to originate from the device manufacturer, a healthcare provider, or a related service and seek further information from the consumer.

69. Medical information also creates risks different from a compromised payment card. Consumers can replace a card, but cannot erase the historical facts of their medical condition or retrieve every copy of information taken from a company's systems. Once obtained by unauthorized persons, the information can be copied and used repeatedly.

70. The Federal Trade Commission explains that medical identity theft can involve misuse of identifying information to obtain medical care, prescription drugs, medical devices, or payment from insurers. Such misuse may also cause inaccurate information to be associated with the victim's medical records. The type of identity and health information involved here creates a foreseeable risk of related misuse.[22]

71. The loss of confidentiality is especially serious when the affected records reflect an extended relationship. Plaintiff has supplied information in connection with Dexcom products and services for approximately thirteen years. The compromise

---

[22] Federal Trade Commission, What To Know About Medical Identity Theft, https://consumer.ftc.gov/articles/what-know-about-medical-identity-theft (last visited Oct. 5, 2026).

alleged here concerns information entrusted in the expectation that it would remain protected throughout its retention.

72. Plaintiff and Class Members have lost control over information they entrusted to Defendant for limited and legitimate purposes. Upon information and belief, unauthorized persons now possess copies that Plaintiff and Class Members cannot demand back, secure, or reliably delete.

73. Reasonable responses to the compromise may include reviewing account activity and communications for impersonation, examining medical and insurance records for improper use, securing affected accounts, and addressing misuse that occurs. The appropriate measures depend on the records involved and the circumstances of the individual consumer.

74. The impairment of confidentiality is itself a present injury. The need to protect against further misuse flows from the unauthorized acquisition of actual records alleged in this Complaint. Defendant's conduct also deprived Plaintiff and Class Members of the confidential handling that was an essential part of the services for which they entrusted their information.

75. Upon information and belief, Plaintiff and Class Members who purchased affected Dexcom products bore an inflated price attributable to the represented benefit of reasonably protected sharing, while the associated data services supplied with those purchases lacked the represented safeguards. Their economic loss is the portion of the purchase price attributable to that misrepresented protection: the difference between the price paid and the price the same product and associated services would have commanded in the same market with their actual security deficiencies disclosed. Plaintiff seeks to establish that price inflation through common evidence of Dexcom's marketing, pricing, product features, and security practices, together with economic analysis that isolates the value of the misrepresented protection. This overpayment does not depend on whether a purchaser used the sharing feature, stopped using it, or experienced later identity theft. The continued ability to measure glucose or transmit

data does not eliminate the overpayment.

76. Since learning of the Data Breach, Plaintiff has been monitoring his credit in response to the risk of misuse of his information. He has devoted time to that monitoring as a result of the breach.

77. Plaintiff has experienced anxiety concerning the compromise of his Private Information and the possibility that it will be misused. His concern includes the loss of confidentiality of the identifying and medical information he entrusted to Dexcom.

78. The financial and nonfinancial consequences will vary among Class Members, but the common source of injury is Defendant's failure to preserve the confidentiality of the information entrusted to it. Plaintiff seeks recovery of losses and statutory relief available under the causes of action asserted for the Nationwide Class and Oregon Subclass, including, for Plaintiff and Class Members who purchased affected Dexcom products, the lost value of reasonably protected sharing functionality included in their purchases but not supplied.

79. An award of damages for the past disclosure will not by itself secure information Defendant continues to hold. Plaintiff's ongoing use of Dexcom's services exposes additional information to the challenged practices, and Defendant's retention of existing records creates a continuing need for appropriate security and narrowly tailored prospective relief.

## CLASS ACTION ALLEGATIONS

80. Plaintiff brings this action individually and on behalf of a proposed Nationwide Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), defined as follows:

> All natural persons residing in the United States whose Private Information, maintained by or on behalf of Dexcom in connection with its consumer products, applications, or services, was accessed, acquired, or exfiltrated by an unauthorized third party in the Data Breach.

81. Plaintiff also brings this action individually and on behalf of an Oregon Subclass under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(5), defined as follows:

> All members of the Nationwide Class who resided in Oregon at the time of the Data Breach.

82. The Nationwide Class is also referred to as the "Class," and its members as "Class Members." The Nationwide Class and Oregon Subclass are collectively referred to as the "Classes." Plaintiff seeks certification of the Oregon Subclass for the Oregon causes of action pleaded below.

83. Excluded from both Classes are Defendant; its officers and directors; persons who participated in the unauthorized access or acquisition; the judicial officers assigned to this action and members of their immediate families; and any person who timely and validly requests exclusion where an opportunity to exclude is required. Information maintained solely in an employment or job-applicant relationship is outside the definitions of both Classes.

84. Plaintiff reserves the right to refine the Nationwide Class and Oregon Subclass definitions based on discovery and the Court's rulings, including to conform a particular claim to the persons whose information and circumstances fall within that claim.

85. *Numerosity*. Upon information and belief, the Nationwide Class includes at least tens of thousands of consumers throughout the United States, and the Oregon Subclass includes at least 40 members, making joinder of the members of each impracticable under Rule 23(a)(1). Dexcom provides connected glucose-monitoring products and support nationwide, including in Oregon, and the incident involves data maintained in its business systems. The number and identities of affected persons can be determined from the compromised records, account information, forensic findings, and any notice lists.

86. *Ascertainability*. Both Classes are defined by objective facts: residence,

information maintained in connection with Dexcom's consumer products or services, and inclusion of that information in the Data Breach. Oregon Subclass membership additionally requires Oregon residence at the time of the Data Breach. Membership does not depend on proving Defendant's legal liability. Defendant's records and the evidence concerning the incident will permit affected persons to be identified.

87. *Commonality.* Common questions of law and fact exist for both Classes under Rule 23(a)(2), including what information was accessed or acquired; how the intrusion occurred; whether Defendant used reasonable safeguards; whether it maintained appropriate access controls and monitoring; whether it properly supervised service providers; and whether those acts and omissions caused the loss of confidentiality.

88. Additional common questions include whether Defendant undertook implied obligations to protect information; whether its practices breached those obligations; whether it retained benefits unjustly; whether its conduct violated duties applicable to medical information; whether Dexcom's promotion of sharing and its security representations increased demand and inflated the prices of affected products; whether purchasers bore that price inflation; whether the overpayment attributable to the misrepresented protection can be measured through common evidence; and what relief is necessary to protect the information Defendant continues to hold.

89. Common questions for the Oregon Subclass also include whether Dexcom misrepresented the security characteristics or quality of its products and services; whether those practices were willful, reckless, or knowing; whether the unlawful practices caused purchasers to pay inflated prices; whether the resulting ascertainable loss can be established and measured through common evidence; whether Dexcom breached a legally imposed duty of confidence; and what monetary and equitable relief Oregon law provides.

90. *Predominance.* Under Rule 23(b)(3), common questions predominate over questions affecting only individual members of each Class. The principal liability

questions concern common security practices, corporate decisions, and the same Data Breach. Those matters will be established primarily through Defendant's policies, technical records, incident investigation, and testimony. The Oregon Subclass's additional claims arise under Oregon law and concern the same practices. The purchased-value claims turn on the common effect of Dexcom's representations on product prices. Plaintiff seeks to measure the resulting overpayment through a common economic methodology that isolates the effect of the misrepresented protection and accounts for differences in product, purchase period, quantity, and the amount of the inflated price borne by each purchaser. Transaction and payment records can supply those inputs. Differences in those amounts do not change the alleged source of the overpayment. Any material choice-of-law issues affecting the Nationwide Class can be addressed through appropriate limitation of particular claims or other case-management procedures.

91. *Typicality.* Plaintiff's claims are typical of both Classes under Rule 23(a)(3) because they arise from the same Data Breach and the same alleged failure to safeguard consumer information as the claims of other members. Like other Class Members, he entrusted Defendant with information for use in connection with Dexcom's products and services and alleges that his information was acquired without authorization. He is an Oregon resident and G7 purchaser whose confidential data relationship, purchased benefit of reasonably protected sharing, and resulting injuries are typical of the Oregon Subclass claims.

92. *Adequacy.* Plaintiff will fairly and adequately protect the interests of both Classes under Rule 23(a)(4). He seeks the same forms of relief for the same challenged conduct and has retained counsel experienced in consumer and data-breach class actions. Plaintiff and counsel intend to prosecute the action vigorously and have no interests antagonistic to either Class. Counsel are qualified to represent the Nationwide Class and Oregon Subclass under Rule 23(g).

93. *Superiority*. A class action is superior to other available methods for fairly

and efficiently adjudicating the claims of both Classes under Rule 23(b)(3). Individual suits would require repeated litigation of the same technical and corporate issues and would be economically impractical for many affected consumers. A class action permits consistent resolution of common issues, efficient use of evidence, and relief for persons whose individual claims would otherwise be difficult to pursue. Concentrating the litigation in this District is desirable because Dexcom is headquartered here and the challenged corporate practices were directed from here. The common records and issues permit manageable classwide adjudication.

94. Certification for equitable relief is also appropriate for both Classes under Rule 23(b)(2). Defendant acted or failed to act on grounds generally applicable to the Classes by administering the information-security practices governing the compromised records. Classwide declaratory and injunctive relief is appropriate to address common practices that continue to affect retained information.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## Negligence

**(On Behalf of Plaintiff and the Nationwide Class Against Defendant DexCom, Inc.)**

95. Plaintiff incorporates by reference the preceding factual and class allegations as though fully set forth herein.

96. Defendant owed Plaintiff and Class Members a duty to exercise reasonable care in collecting, maintaining, securing, and handling their Private Information. The duty arose from Defendant's affirmative collection and custody of sensitive information and its relationship with the identifiable consumers to whom that information pertained.

97. The duty existed independently of any contract. Defendant took possession of information whose unauthorized disclosure foreseeably threatened consumers' privacy and security. Consumers lacked access to Defendant's internal

security systems and reasonably depended on Defendant to exercise care over the information entrusted to it.

98. The foreseeable harm was closely connected to Defendant's conduct. Inadequate restrictions, monitoring, and safeguards over a repository of sensitive information increase the likelihood that unauthorized persons will obtain it. Plaintiff and Class Members are the very persons whose privacy reasonable safeguards were intended to protect.

99. Reasonable care included identifying sensitive records and the systems holding them; limiting access to authorized users with a legitimate need; securing credentials and administrative privileges; monitoring for unauthorized access and extraction; addressing material weaknesses; and reasonably overseeing service providers entrusted with the information.

100. Reasonable care also required periodic evaluation of safeguards, training appropriate to the access granted to personnel, prompt action on material security warnings, and a reasonable incident response. Applicable statutes and published security standards inform the standard of care. Plaintiff seeks relief under this state-law cause of action, not a freestanding private action under the FTC Act or HIPAA.

101. For medical information governed by California Civil Code sections 56.06 and 56.101, Defendant also had a statutory obligation to maintain confidentiality. Plaintiff and affected Class Members are among the persons those provisions protect, and unauthorized disclosure of their identifiable medical information is among the harms the provisions seek to prevent.

102. Defendant breached its duties through the security failures alleged above. Upon information and belief, its access restrictions, safeguards, monitoring, and oversight were insufficient to prevent or reasonably limit the unauthorized acquisition of the information at issue.

103. Upon information and belief, those failures were substantial factors in causing the Data Breach and the loss of confidentiality. Reasonable safeguards would

have prevented the unauthorized acquisition or detected and contained it before the affected information was taken.

104. The criminal acts of the intruders were foreseeable risks against which Defendant's duties required protection. Defendant's responsibility for its own security failures is not eliminated by the fact that unauthorized persons exploited those failures.

105. As a direct and proximate result, Plaintiff and Class Members suffered the privacy injuries alleged above, loss of control over confidential medical and identifying information, and associated damages according to proof. Plaintiff seeks reasonable mitigation losses and other compensatory damages actually sustained and recoverable under governing law.

106. Plaintiff and Class Members are entitled to damages in an amount to be established at trial and appropriate equitable relief addressing Defendant's ongoing retention and protection of their information.

**SECOND CAUSE OF ACTION**

**Breach of Implied Contract**

**(On Behalf of Plaintiff and the Nationwide Class Against Defendant DexCom, Inc.)**

107. Plaintiff incorporates by reference the preceding factual and class allegations as though fully set forth herein.

108. Through their conduct, Defendant and Plaintiff and Class Members entered into agreements under which consumers provided information requested or generated in connection with Dexcom's products and services and Defendant undertook to use and maintain that information for authorized purposes with reasonable safeguards.

109. The mutual undertaking is reflected in Defendant's solicitation and acceptance of identifiable health information, its provision of account and data services using that information, and its repeated receipt of sensitive information to evaluate support and replacement requests. Reasonable confidentiality was integral to

the services offered and accepted.

110. The consideration supplied by Plaintiff and Class Members included the information and cooperation Defendant requested to provide and support its services. The implied undertaking arose from that exchange and the parties' course of dealing, including Plaintiff's repeated provision of demographic and medical information when seeking technical assistance and sensor replacements.

111. The implied terms required Defendant to exercise reasonable care in protecting the information and to limit access and use to authorized purposes. The parties' course of dealing did not contemplate allowing unauthorized persons to obtain and exploit the information.

112. Plaintiff and Class Members performed their obligations by supplying the information necessary to use the services, maintaining their accounts as required, and cooperating with the verification and support processes imposed by Defendant, or their performance was excused.

113. Defendant breached the implied agreements by failing to maintain reasonable safeguards and by allowing the information to be accessed and acquired by unauthorized persons as alleged herein. The resulting loss of confidentiality deprived consumers of an essential benefit of the confidential data relationship.

114. Upon information and belief, Defendant's failures were a substantial factor in permitting the unauthorized acquisition. The harm was foreseeable when the agreements were made because the information was sensitive and was supplied for a limited healthcare or product-support purpose.

115. Plaintiff and Class Members seek contract damages according to proof, including recoverable losses incurred in responding to the breach and the value of the confidential handling promised but not provided. For Plaintiff and Class Members who purchased affected Dexcom products, those damages also include the lost value of the reasonably protected sharing functionality included in their purchases but not supplied. To the extent a breach is established without a measurable compensatory loss, Plaintiff

seeks nominal damages where authorized, including under Civil Code section 3360.

116. This implied-contract claim is pleaded to the extent no enforceable express agreement governs the same data-security obligations. Plaintiff seeks relief for the obligations established by the parties' actual conduct and dealings.

**THIRD CAUSE OF ACTION**

**Unjust Enrichment / Quasi-Contract**

**(On Behalf of Plaintiff and the Nationwide Class Against Defendant DexCom, Inc.)**

117. Plaintiff incorporates by reference the preceding factual and class allegations as though fully set forth herein. This claim is pleaded in the alternative to the contract claim.

118. Plaintiff and Class Members conferred benefits upon Defendant by supplying the identifying and health information necessary to administer accounts, provide connected data services, evaluate support requests, and authorize sensor replacements. Defendant requested, accepted, and retained that information for use in its commercial operations.

119. The benefits were supplied in a relationship that contemplated confidential and reasonably secure handling. Consumers did not confer an unrestricted right to expose their medical and identifying information to unauthorized persons.

120. Defendant knowingly accepted the benefits of the relationship and used the information to support its products and ongoing consumer relationships. Upon information and belief, Defendant retained the resulting benefits while failing to incur or apply the reasonable security measures necessary to protect the information.

121. Defendant's retention of benefits attributable to the information and services for which consumers were denied reasonable confidentiality is unjust. The inequity arises from retaining benefits of the confidential exchange while failing to provide the corresponding protection alleged herein.

122. Plaintiff seeks restitution of benefits conferred at Plaintiff's and Class

Members' expense to the extent those benefits are identifiable, measurable, and recoverable in restitution. He also seeks equitable relief restricting further retention or use of information inconsistent with Defendant's obligations.

123. This claim applies where no enforceable contract supplies the governing remedy or where an asserted agreement is void, unenforceable, or otherwise does not govern the benefit at issue. Plaintiff does not seek duplicative recovery.

**FOURTH CAUSE OF ACTION**

**Violation of the Confidentiality of Medical Information Act**

**(Cal. Civ. Code §§ 56.06, 56.101, and 56.36)**

**(On Behalf of Plaintiff and the Nationwide Class Against Defendant DexCom, Inc.)**

124. Plaintiff incorporates by reference the preceding factual and class allegations as though fully set forth herein. This cause of action concerns the individually identifiable medical information of Plaintiff and Class Members.

125. Under Civil Code section 56.06, subdivision (b), a business offering software or hardware, including an application or related device, designed to maintain medical information for availability to the individual or a healthcare provider for management of the individual's information or medical condition is deemed a provider of health care subject to the CMIA.

126. Dexcom is such a business. Its glucose-monitoring devices, applications, and Clarity services maintain identifiable glucose and related health information and make that information available to consumers and their designated healthcare providers for the management of medical conditions.

127. Dexcom also performs the function described in Civil Code section 56.06, subdivision (a), by maintaining medical information and making it available to individuals or their providers at their request. Subdivisions (f) and (g) require covered businesses to maintain the applicable standards of confidentiality and subject them to remedies for improper use and disclosure.

128. Plaintiff uses the products and services for precisely those purposes. He shares his glucose information with physicians and clinics through Clarity and authorizes related data sharing for his medical care. Dexcom's records associate his identifying information with glucose measurements and information concerning his health and device support.

129. Plaintiff and the affected Class Members are natural persons to whom the information pertains and patients within the meaning of Civil Code section 56.05, subdivision (m). Their identifying information combined with glucose information, medical responses, and information about their condition or treatment constitutes medical information under section 56.05, subdivision (j).

130. Under Civil Code section 56.101, subdivision (a), a covered provider that creates, maintains, preserves, or stores medical information must do so in a manner that preserves its confidentiality. A covered provider that does so negligently is subject to the remedies specified by section 56.36.

131. Defendant violated those duties by negligently maintaining and securing the medical information entrusted to it, thereby permitting unauthorized persons to access, acquire, and review it. The security failures alleged herein caused the medical information to leave Defendant's authorized custody and control.

132. Upon information and belief, unauthorized persons actually accessed and reviewed Plaintiff's and affected Class Members' medical information. The alleged acquisition of Dexcom's data for extortion, the review necessary to identify and characterize the records, and the threat to publish the information support the allegation of a loss of confidentiality. Plaintiff alleges actual unauthorized access and review of identifiable medical information.

133. Neither Plaintiff nor affected Class Members authorized the disclosure or access by those persons. Their permission to share information with selected physicians, clinics, or data platforms was limited to those authorized recipients and purposes.

134. The California conduct supporting this claim includes Dexcom's management and direction of the information-handling and security practices that caused the loss of confidentiality. Upon information and belief, the relevant corporate decisions and omissions were undertaken in or directed from San Diego County as alleged above.

135. Under Civil Code section 56.36, subdivision (b), Plaintiff and affected Class Members seek nominal damages of $1,000 for the negligent release of their confidential medical information, together with actual damages established at trial.

136. Plaintiff also seeks appropriate equitable relief to preserve the confidentiality of medical information Defendant continues to maintain, and other relief available under the CMIA. Any monetary recovery will avoid duplication of compensation for the same injury.

**FIFTH CAUSE OF ACTION**

**Invasion of Privacy**

**(California Constitution, Article I, Section 1)**

**(On Behalf of Plaintiff and the Nationwide Class Against Defendant DexCom, Inc.)**

137. Plaintiff incorporates by reference the preceding factual and class allegations as though fully set forth herein.

138. Plaintiff and Class Members have a legally protected privacy interest in their personally identifying and medical information. Article I, section 1 of the California Constitution protects the privacy interests implicated by the handling and disclosure of that information.

139. Plaintiff and Class Members reasonably expected the information entrusted to Defendant to remain confidential and accessible only for authorized purposes. They provided it to obtain glucose-monitoring services and related assistance, and shared medical data with selected providers and services rather than the public.

140. The circumstances reinforce that expectation. Defendant received information through personal accounts and individualized support interactions, required identity verification, and requested medical responses in connection with services. Those interactions concerned private matters and did not invite unrestricted disclosure.

141. Upon information and belief, Defendant's failure to maintain the safeguards required for the sensitive information in its custody resulted in unauthorized persons obtaining and reviewing it. This was a serious invasion of privacy because it exposed identifiable health information and details of consumers' medical-device use and care.

142. The invasion was substantial in nature and scope. Glucose information and answers to medical questions concern intimate facts about a person's physical condition. Exposure to persons seeking to exploit the records for extortion is highly offensive and incompatible with the purposes for which the information was supplied.

143. Defendant had no legitimate business interest in exposing consumers' information to unauthorized persons. Its legitimate interest in providing products and support could have been served through reasonable safeguards, appropriate restrictions on access, and monitoring of the information it elected to retain.

144. The California acts and omissions alleged herein were substantial factors in causing the unauthorized access and loss of confidentiality. Plaintiff and Class Members suffered injury to their privacy interests as a result.

145. Plaintiff seeks declaratory and injunctive relief to enforce the privacy rights protected by article I, section 1, including appropriate safeguards for information Defendant continues to hold. Plaintiff seeks compensatory recovery for the underlying conduct under the other causes of action pleaded herein.

## SIXTH CAUSE OF ACTION

## Violation of the Oregon Unlawful Trade Practices Act

## (ORS 646.608(1)(e), (g), and 646.638)

***(On Behalf of Plaintiff and the Oregon Subclass Against Defendant DexCom, Inc.)***

146. Plaintiff incorporates by reference the preceding factual and class allegations as though fully set forth herein. This cause of action is asserted for Plaintiff and the Oregon Subclass under Oregon law.

147. Dexcom is a person engaged in business, trade, and commerce within the meaning of ORS 646.605 and 646.608. Its glucose-monitoring products, applications, and connected data services are goods and services offered to consumers for personal, family, and household purposes. Plaintiff purchased the G7 for those purposes and used Dexcom's associated services as alleged above.

148. ORS 646.608(1)(e) prohibits representing that goods or services possess characteristics, benefits, or qualities that they do not have. ORS 646.608(1)(g) prohibits representing that goods or services are of a particular standard, quality, or grade when they are of another.

149. Through its Privacy Notice and the conduct of its connected medical-data services, Dexcom represented that it maintained physical, technical, and administrative safeguards designed to protect consumers' information from theft, unauthorized access, and unauthorized disclosure, consistent with legal obligations and industry practices. Those representations described the security characteristics and quality of the services through which Dexcom collected and maintained the information of Plaintiff and Oregon Subclass Members.

150. Upon information and belief, those representations were false or misleading because Dexcom's actual safeguards, access restrictions, monitoring, and oversight were materially inadequate for the sensitive information it collected and retained. Dexcom supplied products and related services with materially deficient

protection while representing that its data-handling services included appropriate safeguards.

151. The representations and practices were material because Dexcom marketed sharing as a feature of its connected products while representing that it protected the sensitive information required to use that feature. Reasonable consumers would regard materially deficient protection as reducing the value of the integrated product. Upon information and belief, the challenged representations increased demand and affected the prices charged for the products. Plaintiff's own use of sharing and its importance to his purchase illustrate the feature's value. The classwide overpayment theory rests on the common effect on price rather than each purchaser's personal motivation or use of the feature.

152. Upon information and belief, Dexcom's violations were willful. Dexcom knew or should have known that its representations and practices were unlawful. It controlled the security practices it described, knew the sensitivity of the records it solicited, and knew that reasonable security was required to provide the services it offered.

153. Upon information and belief, Dexcom also acted knowingly or recklessly by continuing to represent and supply its connected services as reasonably safeguarded despite material deficiencies in the controls and oversight necessary to protect the information. Its knowledge and recklessness concern its own security practices and representations, which are within its control.

154. As a result of these unlawful practices, Plaintiff and Oregon Subclass Members who purchased affected Dexcom products suffered an ascertainable loss of money or property. Upon information and belief, Dexcom's representations concerning protected sharing increased demand and inflated the prices paid for products whose associated data services lacked the represented safeguards. Those purchasers bore the resulting price inflation whether or not they personally encountered the representations or used the sharing feature. They seek the

overpayment attributable to the misrepresented protection, measured by the difference between the price paid and the price the same products and services would have commanded with their actual security deficiencies disclosed. Causation and the amount of that overpayment will be established through common marketing, pricing, product, and security evidence and an economic methodology accounting for relevant differences in products, purchase periods, and amounts paid.

155. Dexcom's deficient practices also caused the unauthorized acquisition and disclosure alleged herein, depriving Plaintiff and affected Oregon Subclass Members of the confidentiality of records maintained through the purchased services. Plaintiff seeks recovery of present economic loss resulting from the unlawful practices, including the loss of the purchased benefit of reasonably protected sharing, and other recoverable losses according to proof.

156. Under ORS 646.638, Plaintiff seeks actual damages or statutory damages of $200, whichever is greater, together with punitive damages, appropriate equitable relief, and reasonable attorneys' fees and costs. For Oregon Subclass Members, statutory damages are sought upon proof of ascertainable loss caused by Dexcom's reckless or knowing unlawful practices, as required by ORS 646.638(8)(a). Plaintiff does not seek duplicative recovery.

157. This action proceeds under Federal Rule of Civil Procedure 23. Plaintiff will mail a copy of the Complaint or other initial pleading to the Oregon Attorney General upon commencement of the action and a copy of any judgment upon its entry, as required by ORS 646.638(2).

## SEVENTH CAUSE OF ACTION

## Breach of Confidence

## (Oregon Common Law)

***(On Behalf of Plaintiff and the Oregon Subclass Against Defendant DexCom, Inc.)***

158. Plaintiff incorporates by reference the preceding factual and class

allegations as though fully set forth herein. This cause of action concerns the unauthorized disclosure of Plaintiff's and Oregon Subclass Members' confidential medical information entrusted to Dexcom.

159. Dexcom received that information in a confidential relationship undertaken to provide glucose-monitoring products, health-data services, and related assistance. Plaintiff used Dexcom's application and Clarity to maintain medical information and share it with designated physicians and clinics. Dexcom knew the information was private and had been provided for limited healthcare and product-service purposes.

160. Dexcom's duty of confidence has legal sources independent of this tort claim. As a business subject to California Civil Code section 56.06 for the California conduct alleged herein, Dexcom was required by section 56.101 to preserve the confidentiality of the medical information it maintained. For information collected and maintained through its covered healthcare functions, the HIPAA Privacy and Security Rules, including 45 C.F.R. §§ 164.306, 164.502, and 164.530(c), also imposed duties to protect confidentiality and restrict unauthorized disclosure. Dexcom's Notice of Privacy Practices recognizes the duties applicable to those functions.

161. This claim arises from breach of those duties in the confidential relationship. The medical information at issue is not limited to customer contact information: it associates identifiable consumers with glucose measurements, medical responses, and information concerning their condition, treatment, or use of medical devices.

162. Upon information and belief, Dexcom breached its duty of confidence through the deficient handling and protection of those records alleged herein, resulting in actual disclosure to unauthorized persons. Those persons obtained and reviewed identifiable medical information through the Data Breach. The disclosure was unauthorized and unprivileged; consent to share records with designated physicians, clinics, or Tidepool did not authorize disclosure to the persons who acquired the

information in the Data Breach.

163. The disclosure caused a present loss of medical confidentiality. Plaintiff and affected Oregon Subclass Members lost control over information entrusted in confidence, and Plaintiff experienced worry concerning the actual compromise and loss of confidentiality of his identifying and medical information. Those injuries arise from disclosure of the records, in addition to the risk of future misuse.

164. Dexcom's breach was a substantial factor in causing the disclosure and the injuries alleged herein. Plaintiff and the Oregon Subclass seek compensatory damages for the actionable loss of confidentiality and resulting harm according to proof, together with appropriate declaratory and injunctive relief protecting information Dexcom continues to maintain.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Nationwide Class and Oregon Subclass, requests judgment against Defendant as follows:

A. An order certifying the Nationwide Class and Oregon Subclass under Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of both Classes, and appointing his counsel as Class Counsel under Rule 23(g);

B. An award of compensatory damages according to proof, including the overpayment for purchased products and associated services attributable to Defendant's misrepresentations concerning reasonably protected sharing, other recoverable losses, and reasonable mitigation expenses actually incurred as a result of the Data Breach;

C. An award of nominal and actual damages authorized by Civil Code section 56.36(b), nominal contract damages where applicable, and actual or statutory damages under ORS 646.638 for Plaintiff and eligible Oregon Subclass Members, without duplicative recovery;

D. Restitution of benefits unjustly retained at Plaintiff's and Class Members' expense to the extent recoverable under the quasi-contract claim;

E. Declaratory relief establishing Defendant's duties concerning the confidentiality and reasonable protection of Private Information it continues to maintain;

F. An injunction requiring Defendant to implement and maintain reasonable safeguards appropriate to the affected information, including effective access restrictions, account protection, monitoring, security review, and oversight of service providers within Defendant's control;

G. An injunction requiring reasonable identification and notice of the records compromised, an appropriate means for affected consumers to obtain information about the incident, and reasonable measures to reduce the continuing risk of misuse;

H. An injunction requiring appropriate retention limits and secure disposal of information that Defendant no longer has a lawful or necessary basis to retain, while preserving evidence required for this action and information lawfully needed for ongoing services;

I. Reasonable attorneys' fees and costs under ORS 646.638, Code of Civil Procedure section 1021.5, and any other applicable authority;

J. Punitive damages on the Oregon UTPA claim to the extent authorized by ORS 646.638;

K. Prejudgment and postjudgment interest to the extent authorized by law; and

L. Such other and further relief as the Court deems just and proper.

Dated: October 6, 2026

Respectfully submitted,
**WILSHIRE LAW FIRM, PLC**

By: ______________________________
Thiago M. Coelho
Brian Ellsworth

*Attorneys for Plaintiff and the Proposed Class*

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself, the Nationwide Class, and the Oregon Subclass, demands a jury trial on all issues so triable.

Dated: October 6, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

By: ______________________________

Thiago M. Coelho
Brian Ellsworth

*Attorneys for Plaintiff and the Proposed Class*